UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MEMPHIS INVEST, GP,<br><br>              Plaintiff(s),<br><br>vs.<br><br>ANDREW WAITE and NEXZUS<br>PUBLISHING GROUP, LLC,<br><br>              Defendant(s). | 2:13-cv-01282-JAD-NJK<br><br>**ORDER** and<br><br>**REPORT & RECOMMENDATION** |

       Before the Court is Plaintiff's Emergency Motion for Protective Order Forbidding Defendant Andrew Waite From Contacting Witnesses Without Defense Counsel Present, Docket No. 28, which, for the reasons discussed below, is hereby DENIED. The Court has considered Plaintiff's Motion, Docket No. 28, Defendant's Response, Docket No. 33, and Plaintiff's Reply, Docket No. 34. The Court finds this motion appropriately resolved without oral argument and, accordingly, VACATES the motion hearing set for Thursday, December 5, 2013, at 3:00 p.m. in LV Courtroom 3C before Magistrate Judge Nancy J. Koppe. *See* Local Rule 78-2.

**I.     BACKGROUND**

       **A.     Case Background**

       Plaintiff Memphis Invest, GP ("Memphis Invest"), alleges in its Complaint that Defendant Andrew Waite ("Waite") and his company, Nexzus Publishing Group, LLC ("Nexzus"), the publishers of Personal Real Estate Investor Magazine (the "Magazine") committed libel and slander against Memphis Invest. Docket No. 1, at 1. According to Memphis

1  Invest, during the time that it was a regular advertiser in the Magazine, "Waite never printed a
2  negative word about Memphis Invest." *Id.*, at 2. Once it stopped advertising in the Magazine,
3  however, according to Memphis Invest, Waite warned it that "it is not wise to get on a
4  publisher's bad side" and that he "can help or hurt you." *Id*. Thereafter, Memphis Invest alleges
5  that Waite launched "a campaign to malign, disparage and defame Memphis Invest in an attempt
6  to destroy its reputation." *Id*. Memphis Invest filed the present suit against Waite and Nexzus
7  ("Defendants") on July 19, 2013, seeking "to defend and repair its reputation and to have Waite
8  and Nexzus held responsible for the damage caused by their wrongful conduct." *Id*.

9  **B.     Motion Background**

10  On October 24, 2013, Memphis Invest served its Initial Disclosures on Defendants.
11  Docket No. 28, at 3. As part of its Initial Disclosures, Memphis Invest disclosed Kaaren Hall
12  ("Hall"), President of uDirect IRA Services ("uDirect"), as a potential witness and included a
13  copy of an email Waite sent to Hall on November 25, 2012.

14  On November 2-3, 2013, both Hall and Waite attended an industry event, Tim Herriages'
15  REI Expo, in Anaheim, California. Docket No. 28, at 3; *see also* Docket No. 33, at 3. At that
16  event, Hall and Waite had a conversation; however, they have different recollections concerning
17  what occurred during that interaction. *Id*.

18  According to Hall, Waite, "[i]n a clear effort to intimidate her," placed several copies of
19  his Magazine at Hall's booth. Docket No. 28, at 3 (*citing* Hall Declaration). Hall represents that
20  Waite stated that he knew her emails were involved in the present litigation, that her emails were
21  central to the case, and that they were now public record. *Id.*, at 3-4. Additionally, Hall asserts
22  that Waite said he looked forward to filing discovery on all other emails and that he was going to
23  write an article on her company in his January/February issue. *Id*., at 4. Waite also allegedly
24  stated that Hall did not know what she had gotten herself into by being involved in the instant
25  litigation and, later that day, told one of the other Expo exhibitors that Hall was taking "kick-
26  backs" from Memphis Invest. *Id*.

27  Waite, on the other hand, recalls his interaction with Hall quite differently. Waite asserts
28  that it is his routine to personally visit every exhibitor, talk to them, pick up their literature, and

1 give them copies of his most current magazine, so that he can write an article covering the Expo
2 and its exhibitors in the next issue of his Magazine. Docket No. 33, at 3. Therefore, according to
3 Waite, he was merely following his routine when he stopped at Hall's booth, and he was not
4 seeking to contact her directly about this case. *Id*. Waite states that he gave Hall copies of his
5 Magazine. Waite further states that, because the publication on Self-Directed Investing related to
6 the type of business Hall is involved in, he "expressed disappointment" that Hall was not
7 represented as a contributing author in the publication. Waite says that he told Hall that he
8 understood her lack of presence in the publication due to "her support for Plaintiff in the pending
9 litigation - or words to that effect." *Id*., at 4.  Waite asserts that because this lawsuit is based on
10 information provided by Hall, "it was natural" to make at least some comment to a witness that
11 he was not previously aware "was taking information . . . back to Plaintiff." *Id*.  According to
12 Waite, Hall appeared surprised by his comment. *Id*. Additionally, he told her that he was doing a
13 story on her company as one of the many exhibitors at the Expo. *Id*.

14 Later, also at the Expo, Waite had a conversation with one of Hall's employees, Jeff
15 Dixon ("Dixon"). Docket No. 28, at 4; *see also* Docket No. 28, at 4. Waite and Dixon did not
16 previously know each other, but Hall believes that Waite approached Dixon because he was
17 wearing a uDirect t-shirt at the time of the conversation. Docket No. 28, at 4.

18 According to Dixon, Waite introduced himself to Dixon and then proceeded to tell Dixon
19 about the present litigation. *Id*. (*citing* Dixon Declaration). Dixon asserts that Waite then stated
20 that if Hall did not sit down and have a conversation with him before any more discovery was
21 conducted, with an open mind, it could get ugly for Hall and uDirect. *Id*.  Dixon also represents
22 that Waite stated that he was an attorney and that he had done nothing wrong with regard to the
23 claims against him. *Id*.

24 Waite disputes Dixon's characterization of their conversation. Docket No. 33, at 4.
25 According to Waite, he told Dixon that Hall could be hostile, friendly, or neutral to the parties in
26 the instant case, and that he thought neutral could be best. *Id*.  Additionally, Waite asserts that he
27 told Dixon that if Hall wished to have a conversation with him, he would be happy to speak with
28 her as well. *Id*. Waite admits that he "may have said something generically to the effect that

- 3 -

1  cases or things like this could get ugly," but asserts that he did not say nor intimate that things
2  would get ugly for Hall or uDirect if Hall did not speak with him. *Id*.  Further, Waite asserts that
3  he did not hold himself out as an attorney to either Hall or Dixon; however, Waite has a law
4  degree from Auckland University and has previously worked in the legal field, although not as an
5  attorney. *Id*.

6  Shortly after the Expo, Plaintiff's counsel contacted Defendants' counsel and requested a
7  stipulated protective order that would prohibit Waite from communicating with likely witnesses,
8  except through counsel or with counsel present. Docket No. 33, at 5. In response, Defendants'
9  counsel represents that it discussed this issue with Waite and has assured Plaintiff's counsel that
10 the proposed protective order should not be necessary. *Id*., at 6.  Plaintiff's counsel, however,
11 believes that Court intervention is necessary and has filed the present motion seeking to stop
12 Waite's "threats, harassment, and intimidation." Docket No. 28, at 4.  Other than the interactions
13 at the Expo, Plaintiff has not alleged any other harassing or intimidating conduct towards
14 witnesses in this litigation by Waite.

15 **II.    DISCUSSION**
16    **A.    Rule 26 Protective Order**
17 Plaintiff seeks a protective order pursuant to Fed.R.Civ.P. 26(c), which forbids Defendant
18 Waite from "improperly contacting Plaintiff's witnesses." Docket No. 28, at 5.  Rule 26(c),
19 however, does not provide for such injunctive relief. Rather, Fed.R.Civ.P. 26(c), permits the
20 Court to issue orders limiting discovery requests.  The Court can issue protective orders:
21    (A) forbidding the disclosure or discovery;
22    (B) specifying terms, including time and place, for the disclosure or discovery;
23    (C) prescribing a discovery method other than the one selected by the party seeking
24    discovery;
25    (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or
     discovery to certain matters;
26    (E) designating the persons who may be present while the discovery is conducted;
27    (F) requiring that a deposition be sealed and opened only on court order;
28    (G) requiring that a trade secret or other confidential research, development, or

commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed.R.Civ.P. 26(c).

An order requiring any of the above would not address whether Waite can contact witnesses without his attorney present. Further, the three cases cited by Plaintiff in which courts have issued protective orders to prohibit witness intimidation are distinguishable from this case and are not binding. *See* Docket No. 28, at 5.

In *Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics, Inc.*, 2011 U.S. Dist. LEXIS 121426 (D. Mass. Oct. 20, 2011), the witnesses received numerous telephone calls and emails over a period of several months, and they were allegedly threatened to either change their testimony or be sued and financially devastated. Here, Plaintiff alleges a total of two conversations, only one of which was with a potential witness, and Hall does not allege that Defendant Waite told her that she needed to either change her testimony or face retaliation. Rather, Hall represents that she felt that Defendant Waite was threatening her business generally. Therefore, even if the Court were to adopt the reasoning in *Rissman Hendricks*, which it does not, Plaintiff has not made a sufficient showing to justify the sort of protective order issued in that case.

In *Ben David v. Travisono*, 495 F.2d 562 (1st Cir.1974) and *Disability Rights New Jersey, Inc. v. Velez*, 2011 WL 2937355 (D.N.J. July 19, 2011), the courts applied a "reasonable fear of retaliation" standard. The plaintiffs in *Travisono* satisfied that standard because they were prisoners who feared retaliation by prison guards. *Travisono*, 495 F.2d at 564. The court found that the dynamic of being a prisoner was sufficient to meet the "reasonable fear of retaliation" standard. *Id*.

The plaintiff in *Velez*, however, did not meet that standard, even though the witnesses at issue were patients confined to a mental hospital with a situation the court acknowledged was "very similar" to the prisoners in *Travisono*. *Velez*, 2011 WL 2937355, at *5. In *Velez*, the plaintiff asserted that a patient had been told that if he hadn't cooperated in the lawsuit he could

- 5 -

1  have been discharged from the hospital sooner. *Id*. The patient was reportedly deeply frightened
2  by that possibility and communicated that he no longer wished to bring suit. *Id*. Nevertheless, the
3  court found that the plaintiff did not meet the "reasonable fear of retaliation" standard because
4  the patient had previously been frustrated by his inability to leave hospital and, additionally, there
5  was testimony that no actions had been taken to extend the patient's treatment in the hospital. *Id*.
6  The Court was also persuaded by representations from defendants' counsel that steps had and
7  would continue to be taken to prevent any retaliation against patients for participation in the
8  lawsuit. *Id*.

9  Here, the Court is not aware of, and the parties have not cited to, any authority from this
10 Circuit in which a court has adopted the "reasonable fear of retaliation" standard to impose a
11 protective order. However, even if the Court were to adopt such a standard, following *Velez*, that
12 standard has not been met. As an initial matter, Hall is not a prisoner nor is her situation in any
13 way similar. She is free to end any communications directed toward her by Defendant Waite at
14 any time. Next, Hall has not indicated that she will in any way change her testimony based on her
15 one encounter with Defendant Waite, or Waite's conversation with Dixon. Lastly, like the
16 attorneys in *Velez*, counsel for Defendant Waite has represented that it has taken steps to prevent
17 any similar interactions between Defendant Waite and any witness in this case in the future.
18 Accordingly, even if the Court assumes that all the allegations set forth by Plaintiff are true,[1] the
19 "reasonable fear of retaliation" standard is not met.

20 Finally, the Court is not aware of, and the parties have not cited to, any binding authority
21 in which a court has issued a protective order under Rule 26 forbidding a party from contacting
22 all witnesses without his attorney present. The allegations in the present motion do not persuade
23 the Court to develop a standard to that effect. Rather, the Court finds that Plaintiff has
24 effectively requested a preliminary injunction under Fed.R.Civ.P. 65.[2]

---

[1] The Court makes no factual findings at this time concerning the interactions between Defendant Waite and Hall and Dixon.

[2] The Court acknowledges that Plaintiff has expressly requested a preliminary injunction as an alternative to the protective order. The Court's finding is that the request for a protective order is, in effect, also a request for a preliminary injunction.

1         **B.**     **Rule 65 Preliminary Injunction**

2         To obtain a preliminary injunction, the moving party must demonstrate that (1) it is likely
3 to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary
4 relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest.
5 *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 723 F.3d 1067, 1072-73 (9th Cir. 2013) (quoting
6 *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

7         Here, the Court finds that Plaintiff has not met this standard. As Defendants point out, the
8 extent of Plaintiff's explanation for why it is likely to succeed on the merits is that Defendant
9 Waite's communications with Hall further demonstrate that he uses his magazine to spread false
10 statements. Docket No. 33, at 10 (referencing Docket No. 28, at 9). This is not sufficient to show
11 a likelihood of success on the merits. Further, the irreparable harm Plaintiff asserts it will suffer
12 is not substantiated by the allegations in Plaintiff's motion. Plaintiff asserts that it risks losing
13 Hall as its key witness; however, as discussed above, Hall has not indicated that she intends to
14 change her testimony in any way or that she will decline to participate in this case due to
15 Defendant Waite's behavior. Therefore, Plaintiff has not met at least two of the requisite four
16 preliminary injunction factors and the Court recommends that a preliminary injunction not be
17 issued at this time.

18 . . .
19 . . .
20 . . .
21 . . .
22 . . .
23 . . .
24 . . .
25 . . .
26 . . .
27 . . .
28 . . .

**III.    CONCLUSION**

Based on the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED that Plaintiff's Emergency Motion for Protective Order Forbidding Defendant Andrew Waite From Contacting Witnesses Without Defense Counsel Present (#28) is DENIED.

IT IS THE RECOMMENDATION of the undersigned United States Magistrate Judge that Plaintiff's request for a preliminary injunction forbidding Defendant Andrew Waite from contacting witnesses without defense counsel present be DENIED.

DATED this   4th   day of December, 2013.

_____
NANCY J. KOPPE
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).